UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE ANTONIO CAMPOS-OLMOS,<br>Petitioner,<br>v.<br>ANDRE QUINONES ET AL.,<br>Respondents. | CASE NO. 2:26-cv-04273-JHC<br>ORDER |

## I
## Introduction

This matter comes before the Court on Jose Antonio Campos-Olmos's Petition for Writ of Habeas Corpus. Dkt. 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court DENIES the petition.

## II
## Background

Petitioner is a native and citizen of Mexico, who entered the United States in or around 2009. Dkt. 1 at 6. Petitioner states that for the past 11 years, he has been living in Moab, Utah, and working as a chef. *Id.* He also states that he "has been married to a United States Citizen for about five years" and has a seven-year-old son, who is also a U.S. citizen. *See id.*

On February 18, 2026, Petitioner was detained by ICE and was eventually transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains detained today. *Id.* at 5, 7. Soon thereafter, Petitioner filed his first petition for writ of habeas corpus in this District. *Id.* at 7; *see also Campos Olmos v. United States et al.*, No. 2:26-cv-3100-LK, Dkts. 1-1 & 4. The parties then moved for a stipulated order of dismissal. *Campos Olmos v. United States et al.*, No. 2:26-cv-3100-LK, Dkt. 11. On October 19, 2026, the Honorable Lauren King granted the motion and dismissed the action, subject to the condition that Respondents "hold a bond hearing in accordance with *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) within 14 days, or release Petitioner[.]" *Campos Olmos v. United States et al.*, No. 2:26-cv-3100-LK, Dkt. 12.

On October 27, 2026, Petitioner received a bond hearing before Immigration Judge (IJ) Rosen. *See* Dkts. 1 at 7; 7 at 2; *see also Campos Olmos v. United States et al.*, No. 2:26-cv-3100-LK, Dkt. 13. Before the hearing, both sides filed considerable evidence: Petitioner submitted copies of his paystubs, residential lease, marriage license, son's birth certificate, criminal pleas, and support letters from friends and family and the Government submitted copies of Petitioner's 2026 Form I-213, 2019 Form I-213, and documents from his criminal record. *See generally* Dkts. 10, 10-1, & 10-2; *see also* Dkt. 1 at 7. At the outset of the hearing, IJ Rosen acknowledged Judge King's Order and the Government's burden of proving by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. *See* Dkt. 8-1. The parties then presented their arguments concerning flight risk and danger to the community. *See id.*

At the close of the hearing, IJ Rosen denied bond. *See id.* In doing so, IJ Rosen acknowledged that the case presents a "closer call" because of the Government's burden. *Id.* Even still, he concluded that the Government had met its burden of proving that Petitioner is

both a flight risk and a danger to the community based on the documentary evidence and counsel's arguments at the hearing. *See id.* He then cited Petitioner's criminal and immigration history and noted that he had considered Petitioner's ability to pay. *See id.* And on October 30, 2026, the immigration court issued an order reflecting this decision. *See* Dkt. 8-5.

Petitioner did not appeal the IJ's order to the Board of Immigration Appeals (BIA). *See* Dkt. 7 at 2; *see also* Dkt. 11 at 2. Instead, he filed this second habeas corpus petition, contending that his continued detention violates his due process rights under the Fifth Amendment of the U.S. Constitution. Dkt. 1 at 8, 14. Specifically, he argues that his October 27 hearing was constitutionally deficient because IJ Rosen abused his discretion by finding Petitioner to be a flight risk and danger to the community based on factors that, as a matter of law, do not support such a finding. *See id.* And Petitioner requests that the Court immediately release him from custody, declare that his due process rights were violated, grant counsel with explicit leave to seek attorney fees under the Equal Access to Justice Act, and permanently enjoin Respondents from re-detaining Petitioner without prior written notice and an opportunity to be heard before a neutral decisionmaker. *Id.* at 14–15.

## III
## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Respondents, however, have been directed to show cause why the writ of habeas corpus should not be granted under the scheduling order used throughout this District. *See* Dkt. 5 at 1.

Respondents raise two grounds for denying the petition: (1) failure to exhaust administrative remedies; and (2) failure to establish that the IJ abused his discretion. *See generally* Dkt. 7. Because courts in this District regularly waive prudential exhaustion where, as here, the petitioner is challenging the constitutional adequacy of a bond hearing,[1] the Court declines Respondents' request to dismiss this petition for failure to exhaust administrative remedies. Instead, the Court proceeds directly to the merits of Petitioner's abuse of discretion claim.

A habeas court has jurisdiction to review an IJ's bond determination for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024). "Under an abuse of discretion standard, [a federal court] cannot reweigh evidence . . . but can only determine whether the [IJ] applied the correct legal standard." *Id.* (cleaned up and citation omitted); *see also Montiel Moreno v. Hernandez*, 2026 WL 1906522, at *7 (W.D. Wash. June 18, 2026). In determining whether a non-citizen presents a flight risk or danger to the community, an IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079–80 (W.D. Wash. 2026) (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

---

[1] *See, e.g.*, *Smith v. Hernandez*, 2026 WL 2085853, at *2–3 (W.D. Wash. Jul. 20, 2026) (concluding that exhaustion of administrative remedies is not required); *W.T.M. v. Bondi*, 2026 WL 262583, at *2–3 (W.D. Wash. Jan. 30, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100–02 (W.D. Wash. 2026) (same).

"The IJ has 'broad discretion in deciding the factors that [they] may consider' and 'may choose to give greater weight to one factor over others, as long as the decision is reasonable.'" *Montiel Moreno*, 2026 WL 1906522, at *7 (quoting *Guerra*, 24 I. & N. Dec. at 40). But "[b]ond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026). And a district court may find an abuse of discretion if there is "no reasoned connection" between the IJ's factual findings and their determination that the petitioner is a flight risk and/or danger to the community. *Estrada Gutierrez v. Hernandez*, 2026 WL 3073390, at *2 (W.D. Wash. Oct. 14, 2026).

Here, Petitioner contends that "the IJ abused discretion in denying bond based on factors that, as a matter of law, could not independently support a danger and flight risk finding." Dkt. 1 at 13. He also contends that the IJ abused his discretion by ignoring Petitioner's evidence of his established life in the United States, including his work history, marriage to a U.S. citizen, and community ties in Utah. *See id.* The Court disagrees with respect to the dangerousness finding.

From the audio recording, it is clear that IJ Rosen understood it was the Government's burden to prove dangerousness by clear and convincing evidence. *See* Dkt. 8-1. It is also clear that IJ Rosen reviewed the parties' submissions and listened to the parties' oral arguments, including the evidence that related to Petitioner's criminal history. *See id.* And in reviewing the evidence in the record, the Court cannot find that the IJ's danger to the community finding is unsupported as a matter of law in light of Petitioner's criminal history—namely, his assault charge and guilty plea (based on his admitted sexual assault of his stepdaughter), the recency of

his violations, the repeated nature of certain violations, and the overall extent of his criminal record. *See* Dkt. 10 at 7, 73.[2]

The Court also notes that much of Petitioner's evidence in favor of release is itself contradicted by the record. For example, the petition states that IJ Rosen ignored Petitioner's marriage to a U.S. citizen but at the bond hearing, Petitioner's counsel stated that "he was married to a U.S. citizen" and that he and his wife are "no longer together." *See* Dkt. 8-1; *see also* Dkt. 10 at 8 ("CAMPOS claims to be in divorce proceedings"). Likewise, the petition argues that IJ Rosen failed to consider Petitioner's work history and strong ties to Utah; but at the hearing, Petitioner's counsel stated that Petitioner was detained for ten months before being transferred into ICE custody and suggested that if released, he would likely go to Texas to live with his brother. *See* Dkt. 8-1. And while the traverse argues that Petitioner "presented evidence of all of the outcomes of each criminal case listed that specifically rebuts his purported dangerousness[,]" Dkt. 11 at 8, such argument is severely undermined by Petitioner's multiple guilty pleas. *See generally* Dkt. The Court thus does not find that the IJ abused his discretion in "ignoring" such evidence. Nor does it find that such evidence, even if believed and weighed against Petitioner's criminal history, would automatically negate the IJ's danger to the community finding as a matter of law.

Accordingly, the Court concludes that there are facts in the record that would support IJ Rosen's danger to the community finding as a matter of law. It therefore cannot conclude that

---

[2] *See also Singh*, 638 F.3d at 1206 (explaining that "not all criminal convictions conclusively establish that a [noncitizen] presents a danger to the community" and instructing courts to consider "the recency and severity of the offenses"); *Anyanwu v. Bondi*, 2025 WL 3466910, at *5 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025) (concluding that "[t]he evidence of dangerousness is not substantial, but the finding of dangerousness is supportable given the nature of Petitioner's crime and the magnitude of [it]").

the IJ abused his discretion in denying Petitioner bond,[3] and so it denies Petitioner's request for habeas relief at this time.

## IV
## CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus (Dkt. 1).

Dated this 24th day of November, 2026.

John H. Chun
United States District Judge

[3] Because a dangerousness finding provides a legally sufficient basis to deny bond, the Court need not consider whether IJ Rosen abused his discretion in finding Petitioner to be a flight risk.